59 F.3d 168
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Wilbur VINSON, Defendant-Appellant.
 No. 93-5141.
 United States Court of Appeals, Fourth Circuit.
 Submitted May 2, 1995.
Decided June 27, 1995.
 
 Kenneth Mack Williams, Baltimore, MD, for appellant. Lynne A. Battaglia, United States Attorney, Christine Manuelian, Assistant United States Attorney, Baltimore, MD, for appellee.
 Before WILKINSON and HAMILTON, Circuit Judges, and LIVELY, Senior Circuit Judge of the United States Court of Appeals for the Sixth Circuit, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 Appellant Wilbur Vinson challenges his conviction for conspiracy to possess the prescription drug Dilaudid by fraud, misrepresentation, or forgery in violation of 21 U.S.C. Secs. 843(a)(3) and 846 and conspiracy to use "registration numbers" unlawfully to fill fraudulent prescriptions for Dilaudid in violation of 21 U.S.C. Secs. 843(a)(2) and 846. Because we believe the evidence was sufficient to sustain appellant's conviction on both counts, we affirm.
 
 I.
 
 2
 From 1988 through January 1991, multiple defendants operated a prescription drug ring in Maryland, Washington D.C., and Virginia by fraudulently obtaining Dilaudid tablets from area pharmacies and reselling those tablets to street dealers. The conspiracy obtained the drugs by use of prescription forms that appeared legitimate: the forms contained the name of a practicing physician, a legitimate physician registration number, and the listing of a medical practice centered around oncology or cancer treatment (a legitimate use of Dilaudid). The forms, however, contained false addresses and telephone numbers of pay telephones in area train stations or airports. When a pharmacist called to verify the prescriptions, members of the conspiracy would arrange to answer these telephones with the greeting "doctor's office" or "medical center" and thereby legitimize the prescriptions.
 
 
 3
 Phillip Brown served as the "ringleader" of the conspiracy. Brown set up phony drug rehabilitation programs in part to facilitate and legitimize the conspirators' activities. Brown also provided the conspirators with extensive instruction on how to fill out the fraudulent prescription forms, how to respond when pharmacists called to verify the prescriptions, and how to organize their daily activities. Conspirators purchased the prescription drugs at Brown's direction with money supplied by him and later resold the tablets; they then turned the money over to Brown, who paid them accordingly.
 
 
 4
 At trial, the government contended that appellant Vinson began to work for Brown in the fall of 1989, assisting him in passing fraudulent prescriptions. According to the government, Vinson was also involved in setting up one of Brown's illegitimate drug rehabilitation centers. Evidence presented at trial established that on May 10, 1990, the Stafford County Sheriff's Department arrested Vinson, along with Brown and two others, shortly after Vinson passed a fraudulent prescription for Dilaudid at a People's Pharmacy in Stafford, Virginia.
 
 
 5
 After a May 1992 trial ended in a hung jury, Vinson was retried in October 1992. This second trial resulted in conviction on two counts. Vinson was subsequently sentenced to 48 months imprisonment on each count to run consecutively. He appeals his conviction on the ground that it is not supported by sufficient evidence.
 
 II.
 
 6
 Recounting the testimony of various trial witnesses, Vinson contends that no evidence at trial established that he signed any of the fraudulent prescription forms or that he answered any of the pay telephones set up to intercept calls from pharmacies to verify the prescriptions. Vinson testified in his own defense that he had no knowledge of the conspiracy and that his only involvement consisted of "secur[ing] all of the necessary paperwork to open a detoxification center for ... Brown." He met the conspirators at church, Vinson insists; his mere association with them is insufficient to establish his participation in the conspiracy. United States v. Giunta, 925 F.2d 758, 764 (4th Cir.1991).
 
 
 7
 Vinson does admit, however, that he "passed ... one prescription," apparently a reference to the events of May 10 preceding his arrest. And Vinson in fact regularly drove various conspirators around as they filled their fraudulent prescription forms and distributed the drugs. Vinson's testimony was further contradicted by evidence that he wrote and passed fraudulent prescription forms at Brown's direction and was paid in cash for his services.
 
 
 8
 When we view the evidence in the light most favorable to the government, United States v. MacDougall, 790 F.2d 1135, 1151 (4th Cir.1986), Vinson's claim that he drove Brown around only to assist in establishing the rehabilitation center is unpersuasive. A rational trier of fact could readily have concluded, from the evidence presented at trial, that Vinson was actively engaged in the conspiracy to obtain and sell prescription drugs. To sustain a conspiracy conviction, the government need only establish that the defendant knew of the conspiracy's purpose and took some action in furtherance of that purpose. United States v. Brooks, 957 F.2d 1138, 1147 (4th Cir.), cert. denied, 112 S.Ct. 3051 (1992). We believe this standard was fully satisfied by the proof presented at Vinson's trial, his testimony notwithstanding. It was for the jury to evaluate Vinson's credibility, United States v. Tresvant, 677 F.2d 1018, 1021 (4th Cir.1982), and we decline to disturb its verdict on appeal.
 
 III.
 
 9
 For the foregoing reasons, the judgment of the district court is affirmed.
 
 AFFIRMED